E. T. PARKER, Sheriff, *v.* E. W. ROBERTSON, Auditor.

The Act of 1857 having provided that "all the criminal expenses incurred in the different parishes o this State, by arrests, confinement, and prosecution of persons accused of crime, their removal to prison, the pay of witnesses, and all other expenses attending criminal prosecutions, except the pay of jurors, shall be paid by the State, upon the certificate of the Clerk and the presiding Judge of the several courts of this State," the duties of the Auditor relative to accounts for such expenses thus certified, are ministerial and imperative, and he must issue his warrant on the Treasurer therefor. It would be otherwise, if the certificate of the Clerk and Judge should show upon its face that it was not drawn in accordance with the law, as, for instance, if it purported to be for fees in civil suits.

The 15th section of the Act of 1855, which gives the Sheriffs $100 per annum for their fees in criminal cases, did not intend this sum as their sole compensation. There are many services rendered by Sheriffs, which are not provided for in the fee bill.

The party convicted in a criminal case must be condemned to pay the costs, and after a return of *nulla bona*, or after the Clerk and Judge are satisfied by sufficient evidence that the convict has no property, then the State becomes responsible for the costs.

APPEAL from the Second District Court of New Orleans, *Morgan*, J. *Randell Hunt*, for plaintiff. *E. W. Moïse*, Attorney General, for defendant and appellant.

COLE, J. On the 15th of December, 1858, an account of *E. T. Parker*, Sheriff of the parish of Orleans " for fees incurred in the prosecution of criminals from the 1st of April to the 30th of June inclusive," was presented to the Auditor of the State of Louisiana, to be audited, which was refused.

The bill included not only fees, but also the expenses incurred during the specified period for cab-hire, refreshment to jurors, the pay of witnesses, candles, lamps, &c., with the exception of the pay of officers.

Plaintiff then applied for a *mandamus* to direct the Auditor to draw a warrant upon the Treasurer of the State, in his favor, for the amount of the bill, and to deliver the warrant to him.

The order issued, commanding the Auditor to show cause why the writ should not be granted.

Upon the trial of the rule, it was made absolute. The Auditor appealed.

The bill of plaintiff is claimed under the Act of 19th March, 1857, entitled " An Act relative to the payment of expenses incident to the prosecution of criminals." Sess. Acts, 1857, p. 187.

Sec. 1. Be it enacted, &c., " That all the criminal expenses incurred in the different parishes of this State, by arrests, confinement, and prosecution of persons accused of crime, their removal to prison, the pay of witnesses, and all other expenses attending criminal prosecutions, except the pay of jurors, shall be paid by the State upon the certificate of the Clerk and the presiding Judge of the several courts of this State."

The bill of plaintiff was certified, as required by the preceding section.

The duties of the Auditor would appear to prevent him from impugning the certificate, when it is upon its face within the particular jurisdiction confided to the Judge and Clerk by the section aforesaid of the Act of 1857.

Sections 5 and 12 of the Act of 1855 " to regulate the office of Auditor of Public Accounts," read as follows :

Sec. 5. Be it enacted, &c., " That it shall also be his duty, first, to audit, adjust, and settle all claims against the State, payable out of the treasury, *except*

32

PARKER
*v.*
ROBERTSON.

*such claims as may be expressly required by law to be audited and settled by some other officer or person.*"

Sec. 12. " That in all cases of accounts audited and allowed against the State, and in all cases of grants, salaries and expenses allowed by law, the Auditor shall draw a warrant upon the Treasurer for the amount due, in the following form," &c. Sess. Acts. 1855, p. 125, §§ 5 and 12.

The Act of 1857, already recited, provides that the criminal expenses shall be paid " upon the certificate of the Clerk and the presiding Judge of the several courts of the State."

The Act of 1857 leaves it to the wisdom of the Judge and Clerk to interpret the Act of 1857, and to decide what are the expenses intended by it. The duties of the Auditor relative to accounts thus certified are ministerial and imperative. He has no supervisory control over the Judge and Clerk, and is not an appellate or superior tribunal vested with the power of deciding that these officers have been in error in their interpretation of the law.

The Legislature have manifested their confidence by clothing them with the power of certifying these accounts. They are also able to certify knowingly, because the services are rendered in causes that have been tried before them.

It is true, that as the certificate is, according to *Mr. Crittenden,* " the evidence of the exercise of a special and limited jurisdiction, it must show upon its face a case within that jurisdiction."

If, for example, the certificate of the Judge and Clerk should show upon its face, that it was for fees in civil suits, the Auditor might refuse to authorize its payment, because there is no law empowering the Judge and Clerk to certify them in order to have them paid by the State.

But when the law orders that the expenses in criminal matters shall be paid upon the certificate of the Judge and Clerk, it leaves to them the interpretation of the nature of the expenses, and the Auditor is obliged to follow their interpretation and to view as expenses whatever they have so considered, which have been caused in criminal matters before them.

If they abuse their trust, or err in their interpretation, it is easy for the Legislature to deprive them of the power of certifying.

Our construction of the powers of the Auditor appears to have been that of several of the Attorneys General of the United States in analogous cases, and also that of several of the Justices of the Supreme Court of the United States.

The fourth section of the Act of Congress of 8th May, 1792, (1 Statutes at large, 277,) has this provision in relation to the Marshal's accounts : " The same having been examined and certified by the court or one of the Judges of it, in which the service shall have been rendered, shall be passed in the usual manner at, and the amount thereof paid out of the Treasury of the United States to the Marshal," &c.

Mr. Justice Story was of opinion " that the certificate of the Judge upon the examination of the Marshal's accounts was conclusive, and that the items of the charges are not re-examinable in any manner, by the officers of the Treasury Department." He further says, " Some years since, the same question was brought before the Judges of the Supreme Court of the United States for their consideration, upon the instance of some one of the Judges. It was then fully considered by all of us ; and it was the unequivocal opinion of the Judges, (and my impression is, that there was an entire unanimity of opinion), that the certificate of the

Judge upon the accounts of the Marshals was conclusive and could not be re-examined at the Treasury Department, but must be passed as of course. I have never, at any time, heard a doubt expressed by any Judge, that this was the true and only legitimate construction of the statute; and I have no objection to its being communicated to the Treasury Department." Rep. of Com. H. R., No. 132, 2d sess. Cong. p. 8.

See also, upon the same and analogous questions, the opinions of Attorneys General U. S., Reverdy Johnson, H. S. Legaré and J. J. Crittenden. *Homme-rich* v. *Hunter, State Treasurer,* ante p. 225.

Upon the hypothesis, however, that the certificate of the Clerk and Judge is not conclusive, and that the Auditor was entitled to go behind the certificate and to re-examine the Sheriff's account, he was still bound to issue the warrant demanded, because all the items in the account are for the expenses of criminal prosecutions in the parish of Orleans, which the Legislature in the Act of 1857 declares shall be paid by the State.

The correctness of the fees is not disputed, but the liability of the State for their payment is denied. The expenses in the bill, except the fees of the Sheriff are admitted to be a legal charge against the State. The Attorney General in his brief says, that the expenses of cab hire, lights, &c., are admitted, and that the inquiry is "narrowed" down to this: did the State, in the Act of 1857, assume the payment of Sheriff's fees in criminal cases? It is denied that fees are included in the word "expenses" in the Act of 1857, already quoted. In justification of this denial, reference is made to the Acts of 1805, 1807 and 1808 of the Legislative Council of the Territory of Orleans, and to those of 1813, 1817, 1842 and 1848 of the Legislature of the State.

Even admitting that during this period Sheriffs were not paid by the State their fees in criminal prosecutions, or received in their stead a small compensation fixed by law, not for any particular official acts, but for the whole of their services, still, this would not defeat the demand of plaintiff.

A reference to ancient statutes to illuminate a modern law is not so satisfactory when there is a manifest variation between them, and when the intention of the Legislature to depart from the former jurisprudence has been clearly exhibited, as we shall proceed to show has been done, in their legislation upon the payment of criminal expenses.

In 1852, an Act to change and regulate the expenses of criminal prosecutions throughout the State was passed, which is as follows:

Sec. 1. "That all the expenses hereafter incurred in the different parishes by the attendance of physicians, and for maintenance and clothing of individuals condemned for the commission of any crime, and of such as are accused of any crime or misdemeanor cognizable by the District Courts of this State, shall be paid by the respective parishes in which the offence or offences charged may have been committed."

Sec. 2. "That the fees, salaries and expenses provided by this bill to be paid by the local authorities, shall be fixed and regulated by the said authorities; and until the same be done by the said authorities, the fees, salaries and expenses shall remain as now fixed by law and be paid by the local authorities."

Sec. 3. "That all laws, or parts of laws, upon the subjects treated of in this Act, be and the same are hereby repealed." Sess. Acts, 1852, p. 180.

The point to be noticed in this statute is that "expenses" in the first section are made in the second section to include "fees."

PARKER
v.
ROBERTSON.

It is not so clear that Sheriffs would be entitled to be paid, under this law, their fees in criminal prosecutions, but it was so interpreted by the city authorities, and Sheriff *Marigny* was paid under it for sundry prosecutions.

In 1855, under the title of " expenses of criminal prosecution," the Legislature enacted the following statutes :

Sec. 68. Be it further enacted, &c., " That all the expenses incurred in the different parishes by the arrest, confinement and prosecution of persons accused of crime, their removal to prison, the pay of witnesses, jurors, &c., and all expenses whatever attending criminal prosecutions, shall be paid by the respective parishes in which the offence charged may have been committed."

Sec. 69. " That the fees, salaries and expenses to be paid by the local authorities, shall be fixed and regulated by them ; and until the same be done, they shall remain as now fixed by law."

Sec. 73 repeals all other laws contrary to the provisions of this Act. Sess. Acts, 1855, p. 161.

" Fees " in the 69th section are included in this statute in " expenses " in the 68th section, and these sections clearly provide for their payment ; for not only are mentioned the pay of witnesses and jurors, but also the expenses for the arrest and prosecution of persons accused of crime.

Even if the ancient legislation made a distinction between fees and expenses, and expenses did not comprehend fees, yet this statute embraces fees in the word " expenses " and repeals all laws contrary to the provisions of this Act.

In 1857, an Act was passed " relative to the payment of expenses incident to the prosecution of criminals," which is as follows :

Section 1. Be it enacted, &c., " That all the criminal expenses incurred in the different parishes of this State, by arrests, confinement and prosecution of persons accused of crime, their removal to prison, the pay of witnesses, and all other expenses attending criminal prosecutions, except the pay of jurors, shall be paid by the State upon the certificate of the Clerk and the presiding Judge of the several courts of this State." Sess. Acts, 1857, p. 187.

This Act is almost identical with that of 1855, except that it excludes from the expenses to be paid by the State the pay of Jurors, makes the State, instead of the parishes, responsible for the criminal expenses, and ordains that the expenses shall be paid upon the certificate of the Clerk and the presiding Judge of the several courts of the State.

The Act of 1855 in the use of the word " expenses " included therein " fees," and if there were any doubt of the intention of the Legislature in the use of the word " expenses " in the Act of 1857, it would be reasonable to interpret " expenses " therein to include fees, because it is almost a reënactment of the Act of 1855. If the Act of 1857 were not to be so understood, then the word " expenses " would be defined as used, according to the Attorney General, by the ancient jurisprudence, and be considered as not embracing " fees." But the ancient legislation upon the subject was repealed by the Act of 1855. It seems more rational, then, to define expenses as used by the Act of 1855, particularly as the Act of 1857 does not contain any repealing clause. The Act of 1857 must be considered to be a substitute for that of 1855, and to have used the word " expenses " in the same sense as it was understood in the latter Act.

The statute of 1857, however, appears to be clear and comprehensive.

It provides that all the criminal expenses shall be paid by the State, except the pay of jurors, and explains the nature of the expenses, namely all those in-

curred by arrests, confinement and prosecution of persons accused of crime, their removal to prison and the pay of witnesses. In order, however, to remove all doubt, it adds, that all other expenses attending criminal prosecutions, except the pay of jurors, shall be paid by the State.

Fees of Sheriffs are certainly a part of the expenses attending the arrest, confinement, removal to prison and prosecution of persons accused of crime.

If such were not the intention of the Legislature, they could have excepted from the expenses the fees of Sheriffs, as they excluded the pay of jurors.

It is admitted that under the Act of 1857, *John M. Bell*, Sheriff of the parish of Orleans, was paid out of the State Treasury fees and costs of criminal prosecutions in the parish of Orleans, for a part of the year 1857.

It is, however, argued, that the 15th section of the Act of 1855 " gives the Sheriff a salary of one hundred dollars per annum, for his services in matters of a a criminal nature pending in courts, and that this was intended to compensate him in full for his services in all cases where the accused was acquitted, and in all cases in which the person convicted was unable to pay the costs."

Sec. 15 is as follows : " Every Sheriff in this State shall be entitled to one hundred dollars per annum, and each and every Clerk of the several District Courts to fifty dollars per annum, as a compensation for their services in matters of a criminal nature pending in their respective courts." Sess. Acts, 1855, p. 168.

This statute does not declare that Sheriffs shall not be entitled to more than one hundred dollars for their fees in matters of a criminal nature ; and this same Act, section 12, provides that Sheriffs shall be entitled to demand from the parish one dollar for whipping any person sentenced to that punishment, and twenty-five dollars for executing any person condemned to capital punishment, to be paid by the parish.

Besides, the Legislature have put their interpretation upon section 15, by declaring in the Act of 1857 that the fees of Sheriffs shall be paid by the State.

The Act of 1857 is subsequent to that of 1855, and if there be any portion of the latter Act upon the same subject-matter, which is opposed to the former, it must be considered to have been repealed.

But it is unnecessary in the case at bar to view them as adverse in their provisions, for there are many services in criminal matters performed by Sheriffs, which are not provided for in the fee bill.

They are obliged to be with juries when they retire to take their meals, to watch over them when the court takes a recess, to keep an eye over prisoners not upon bail when in court, and they render many other services not detailed in the fee bill.

A hundred dollars appears to be a moderate compensation for services performed by Sheriffs in criminal matters, for which fees are not provided in the fee bill.

It is also objected, that the Act of 1855 provides that the party convicted shall pay the costs of prosecution, and the question is asked, does the Act of 1857 repeal this provision of that Act. It does not, but according to our construction of these two Acts, the party convicted must be condemned to pay the costs, and after a return of *nulla bona,* or after the Clerk and Judge are satisfied by sufficient evidence that the person convicted has no property, then the State becomes responsible for the costs. See opinion of H. D. Gilpin, Attorney General U. S., July 20th, 1840.

Judgment affirmed, with costs.

PARKER
*v.*
ROBERTSON.

MERRICK, C. J., concurring. I do not attach much importance to the fact, that the fees of officers in criminal prosecutions, were not paid by the State from 1814 to 1857, for the reason that the State is a sovereignty, and such payments could only be made by some special legislation. Salaries were paid to Sheriffs instead of detailed fees.

In 1852, a new system was inaugurated. The "expenses" in criminal proceedings were thrown upon the parishes and city, by the first section of the Act of 1852, and the second section of the same Act defined what was meant by " expenses," in saying, " that the *fees, salaries* and expenses provided by this bill, to be paid by the local authorities, shall be fixed and regulated by said authorities ; and until the same be. done by said authorities, *the fees, salaries and expenses,* shall remain as now fixed by law, *and be paid by the local authorities.*"

There, then, was new legislation and a declaration by the sovereign, that *fees, salaries and expenses,* were to be paid by the local authorities.

To aid the parishes in meeting the new burden thus imposed, the Legislature, the following year, granted the parishes and the city of New Orleans, all fines and forfeitures collected in the same respectively. Acts 1853, p. 295.

In 1854, a law was passed declaring the moneys collected for fines and forfeited bonds in the parish of Orleans, a special fund out of which " *all costs* and expenses accruing in criminal prosecutions, in the First District Court of New Orleans," should be paid. Acts 1854, p. 58.

In 1855, as is well known, the Legislature undertook to reduce to one body the previous legislation on many subjects, and in pursuance of this object, the Act of 14th of March, 1855, relative to *criminal proceedings* was passed, which uses the word " expenses" in the same comprehensive sense as the first section of the Act of 1852. The sixty-eighth section, p. 161, is in these words : " That *all the expenses* incurred in the different parishes by *arrest, confinement and prosecution* of persons accused of crime, *their removal to prison,* the pay of witnesses, jurors, &c., and *all expenses whatever* attending criminal prosecutions, shall be paid by the respective parishes, in which the offence charged may have been committed."

Here again the word " expense" is used in its usual sense, and is expressly declared by the lawgiver to comprehend costs and fees.

And in the following section, he reiterates the same definition as contained in the second section of the Act of 1852, and confers on the local authorities the same powers. See Acts 1855, 161, secs. 68, 69.

Up to this point, the case presents no difficulty. But in 1855, in an Act, to define and regulate costs and fees generally, the Legislature, notwithstanding it had conferred upon the local authorities the power to regulate fees, &c., and bound them to pay the fees and costs of criminal prosecutions, gave, it would seem, to the Clerk and Sheriffs, (at least whenever it was to their advantage,) a cumulative mode of obtaining compensation, (which in some parishes would doubtless more than equal their fees,) by awarding the Sheriff one hundred dollars, and the Clerk fifty dollars. Acts of 1855, p. 168.

But whatever may have been the object of the Legislature in reviving the former provisions of law, at the same time it compelled the local authorities to pay the fees and costs of prosecution, and gave them power to regulate the same, it cannot annihilate the plain provisions of the special Act relative to criminal proceedings.

The last named Act professed to treat directly of the subject matter in hand, and it compelled the local authorities to pay, under the term " expenses," the She-

riff's fees, viz, " all expenses incurred by arrest, confinement, and prosecution of persons accused of crime, their removal to prison, the pay of witnesses, jurors, &c., and all expenses whatever attending criminal prosecutions, and is thus a special Act on the subject. See *St. Martin* v, *The City*, ante p. 113.

Under these laws, the Sheriffs of New Orleans were paid their fees in criminal cases, from 1852 to the year 1857, and it was never pretended or supposed that the cumulative compensation of the Act of 14th of March, 1855, could deprive the Sheriff of the compensation explicitly given him by the Act to regulate criminal proceedings. Indeed, what compensation would $100 be to the Sheriff of the parish of Orleans for his fees in the criminal prosecutions ?

It is well known that the people of some of the parishes complained of the burden imposed upon them by this legislation. In 1857, therefore, the Legislature, using a term which it had so repeatedly defined, took upon itself, by the same terms, and by nearly the same words, the burden which it had previously imposed upon the local authorities. Its language is :

" That *all* expenses incurred in the different parishes in this State *by arrests, confinement and prosecution* of persons accused of crime, their removal to prison, the pay of witnesses, and *all other expenses* attending criminal prosecutions, except the pay of jurors, shall be paid by the State, upon the certificate of the Clerk and the presiding Judge of the several courts of this State."

And whilst the State relieved the local authorities in this manner, it attempted, by a subsequent section, (which has been declared unconstitutional,) to withdraw from them the fines and forfeitures which had been granted to meet the burden.

It appears to me, therefore, that the fees of the Sheriff in criminal prosecutions form a part of the subject-matter confided to the Clerk and Judge to audit.

And I concur with my colleagues, that on any matter confided to them, their action is conclusive upon the Auditor of Public Accounts, and when they have once directed the fees of the Sheriff in criminal prosecutions to be paid, the duty of the Auditor is only ministerial, and he must draw a warrant for the same.

LAND, J., dissenting: The account in dispute is for the sum of $2801 60, is stated to be for " *fees incurred in the prosecutions of criminals,* from the 1st day of April to the 30th of June, 1858, inclusive," and is certified by the Judge and the Clerk of the First District Court of New Orleans to be correct.

That the Legislature has the right to declare what expenses, fees and salaries, in criminal prosecutions, shall be paid by the State, and to fix the amount thereof, and to prescribe *the mode of payment*, is not disputed. This right has at all times been exercised by the State, and from an examination and comparison of the *laws now in force*, upon the subject of Sheriff's fees in criminal cases, with the *former laws* upon the same subject-mattter, they are found to be uniform, consistent and identical.

The Act approved March 28th, 1813, to " *establish explicit fee bills*," provides that the several Sheriffs throughout the State shall be entitled to demand and receive certain fees for their services in civil and criminal cases, and the 14th section thereof provides, " that the Sheriff of the First District shall be allowed for *his services in criminal prosecutions* and *all ex-officio services not otherwise provided for*, a sum not to exceed two hundred dollars ; and all other Sheriffs for like services, a sum not to exceed forty dollars, which allowance shall annually be paid by the District Judge, and shall be paid out of the public treasury on the warrant of the Judge."

The Act of 1855 " *to regulate and define costs and fees generally,*" approved March 14th, *which is the law now in force,* provides that the Sheriffs throughout the State shall be entitled to demand for their services in civil and criminal cases certain fees, *and no more,* and the 15th section thereof provides, " that every Sheriff in this State shall be entitled to one hundred dollars per annum, and each and every Clerk of the several District Courts to fifty dollars per annum, as a compensation for their services in matters of a criminal nature pending in the respective courts."

This provision in the Act of 1855, granting to Sheriffs a fixed compensation or salary for their services in criminal cases pending in the courts, has been the settled policy of the State, so far as I can learn from the statutes, since the year 1813.

This policy was not changed by the Act of 1852, which imposed upon the parishes respectively, the obligation of paying all expenses in criminal prosecutions, nor by the Act of 1855, which continued that obligation in force, until the passage of the Act of 1857, by which the payment of these expenses was resumed by the State.

It is admitted that at the date of the passage of the Act of 1852, the State did not pay to Sheriffs, fees for their services in criminal cases pending in court, and as the Act of 1852 expressly declares that the fees, salaries and expenses in criminal prosecutions *shall remain as then (now) fixed by law, until changed by the local authorities, it necessarily follows,* that the parishes were not bound to pay any greater or other fees, salaries or expenses than the State had paid prior to the passage of *that Act,* and that whether the parishes paid the salaries formerly paid by the State, or paid specific fees in place thereof, *was a matter left by the Act to the discretion* of the local authorities. The Act of 1855 contained the same provision, that the fees, salaries and expenses *shall remain as then fixed by law,* until changed by the local authorities. It is also admitted that at the date of the passage of *this Act* the State did not pay to Sheriffs, fees for their services in criminal cases pending in court.

It appears from these various Acts, and the admissions in the record, that the public policy of the State to allow Sheriffs, a fixed compensation or salary for their services in criminal cases pending in the courts, instead of specific fees, has remained unchanged from the year 1813 to 1857, and the question presented to this court is, whether the Act of 1857 *has changed that policy,* or *repealed* the *laws* establishing it.

The Act of 1852, page 188, is as follows :

Section 1. That all the expenses hereafter incurred in the different parishes, by the attendance of physicians and for maintenance and clothing of individuals condemned for the commission of any crime, and of such as are accused of any crime or misdemeanor cognizable by the District Courts of this State, shall be paid by the respective parishes in which the offence or offences charged may have been committed.

Section 2. That the fees, salaries and expenses provided by this bill, to be paid by the local authorities, shall be fixed and regulated by the said authorities ; and until the same be done by the said authorities, *the fees, salaries and expenses shall remain as now fixed by law, and be paid by the local authorities.*

The Act of 1855 is in these words :

Section 69. All the expenses incurred in the different parishes, by the arrest, confinement and prosecution of persons accused of crime, their removal to prison,

the pay of witnesses, jurors, &c., and all expenses whatever attending criminal prosecutions, shall be paid by the respective parishes in which the offence charged may have been committed.

Section 70. The fees, salaries and expenses to be paid by the local authorities, as above provided, shall be fixed and regulated by them, except for the maintenance of prisoners ; and until the same be done, *they shall remain as now fixed by law.*

The Act of 1857 is as follows :

Section 1. That all the criminal expenses incurred in the different parishes of this State, by arrests, confinement and prosecution of persons accused of crime, their removal to prison, the pay of witnesses and all other expenses attending, criminal prosecutions, except the pay of jurors, shall be paid by the State, upon the certificate of the Clerk and the presiding Judge of the several courts of this State.

It is evident that the only intention of the Acts of 1852 and 1855, was to impose upon the parishes the payment of all expenses in criminal prosecutions ; and it is equally evident that the only intention of the Act of 1857 was to resume the payment thereof on the part of the State.

The language of the Acts imposing upon the parishes the payment of all expenses in criminal matters, *is more general* and *comprehensive* than the *language* of the Act of 1857, resuming the payment thereof.

It has already been shown, that it was only the intention of the Legislature, by the use of the general terms, *fees, salaries and expenses, in the Acts of* 1852 *and* 1855, to impose upon the parishes the payment of such fees, salaries and expenses *as were then established by law,* and which *the State itself was bound to pay*—for those Acts declare, that the fees, salaries and expenses thus imposed, *shall remain as then fixed by law,* until changed by the local authorities. It has also been shown by the statutes, that the State at the respective dates of the Acts of 1852 and 1855 was only bound to pay Sheriffs for their services in criminal cases pending in the courts, *the salaries* provided by law, and not *specific fees.*

It is also shown by an admission in the record, that no liability on the part of the State to pay Sheriff's fees in criminal cases was acknowledged at the treasury from the year 1814 to 1857.

The Act of 1855, " to define and regulate fees and costs generally," is the law now in force, and which determines the fees which Sheriffs are entitled to demand and receive in civil and criminal cases. The only fees allowed by this Act, which Sheriffs are entitled to demand and receive in criminal cases *from the State,* in addition to the salary of one hundred dollars granted by the 15th section, are the fees for keeping and maintaining prisoners in jail, and for transporting prisoners to the penitentiary, or from one parish to another.

The Act of 1857 does not expressly repeal the last mentioned Act of 1855, or any part thereof, nor does it contain any provision inconsistent with or repugnant thereto.

The fees claimed by plaintiff are the fees to which Sheriffs are entitled in *civil cases.* There is no law providing that Sheriffs shall be entitled to demand *like fees* from the State in *criminal cases.*

The Act of 1855, establishing explicit fee bills, is *similar to the former Acts* on the same subject-matter, and the interpretation given to those Acts, and acquiesced in from 1814 to 1857, was, *that Sheriffs were not entitled to demand of the State fees in criminal cases.* This interpretation of the former laws, identical with the

33

PARKER
*v.*
ROBERTSON.

present, must have been known to the Legislature when the Act of 1857 was passed ; and *the failure of the lawgiver* to declare specially in the Act of 1857, that Sheriffs should be entitled to demand for their services in matters of a criminal nature pending in the respective courts, *other and greater fees* than allowed by the Act of 1855, is conclusive to my mind that such was not his intention.

In my opinion, the Act of 1855, " to define and regulate costs and fees generally," *is in full force,* and is decisive against plaintiff's right to demand the payment of fees from the State *in matters of a criminal nature,* and that as the fees claimed by him are not allowed *by that Act,* that he is not entitled to demand and receive them from the State.

Debts against the State can only be created by express and unequivocal legislation, and not by implication or the interpretation of general and indefinite words in a statute, such as are used in the Act of 1857.

Article 94 of the Constitution provides, that no money shall be drawn from the treasury but in pursuance of a specific appropriation made by law, and this provision presupposes the existence of a debt specially created and acknowledged to be due from the State, anterior to the appropriation itself.

The appropriation of one hundred thousand dollars made to pay the expenses in criminal prosecutions under the Act of 1857 was nearly exhausted at the date of the Treasurer's report to the Legislature, and was wholly insufficient to pay the *acknowledged claims for expenses in criminal matters,* together with claims of the character of the one in dispute ; and the assumption that the appropriation was made to pay the fees claimed by plaintiff, as part of the expenses in criminal prosecutions, for which the State is liable, is entirely unsupported.

The fact that a part of the fees claimed by Sheriff *Bell* and his successor the plaintiff, was paid at the treasury under the Act of 1857, cannot affect the question as to the *meaning of the Act itself.* This suit shows that these payments are considered at the treasury to have been made in error.

The argument that the compensation of *one hundred dollars,* allowed to Sheriffs for services in criminal prosecutions, is *insufficient, unjust* or *impolitic,* can with more propriety be considered by the Legislature than this court.

The office of Sheriff is no where vacant. The State compels no citizen to hold the office. It is filled throughout the State by able and efficient incumbents who voluntarily assume the burden of service in criminal prosecutions for the inadequate compensation provided by law, in consideration of the fees to which they are entitled in civil proceedings, and, therefore, have no legal right to complain.

In my opinion, the judgment of the lower court is erroneous, and should be reversed.

VOORHIES, J., absent.