No. 6817.

STATE EX REL. JACOB STRAUSS VS. J. G. BROWN, ADMINISTRATOR OF PUBLIC ACCOUNTS.

In virtue of an act of the Legislature passed March 17, 1870, no creditor of the city of New Orleans, whether he be the holder of a liquidated, or an unliquidated claim, can compel by mandamus, any auditing officer of the city to issue, or deliver to him, a warrant for any amount due him; or compel any disbursing officer of the city to pay him any sum which he may claim that the city owes him.

State ex rel. Strauss vs. Brown.

A mere change in the title of an officer who performs certain, described functions in the government of a city, will not make him amenable to the operation of a summary writ, from which, under his former title, he was exempted by special statute.

An act of the Legislature which leaves to creditors the ordinary legal remedies for the enforcement of their rights, and merely restrains them in certain cases from employing the summary process of mandamus, does not violate the constitutional provision that every injured person shall have adequate remedy by due process of law, and without unreasonable delay.

APPEAL from the Sixth District Court, parish of Orleans. *Rightor*, J.

*Hornor & Benedict* for plaintiffs and appellants.

*B. F. Jonas* for defendant.

The opinion of the court was delivered by

MARR, J. Relator seeks to compel, by mandamus, the Administrator of Public Accounts, of the city of New Orleans, to issue and deliver to him a warrant for the amount due on certain pay-rolls, of which he claims to be transferee and owner.

The Administrator excepts that by the Act No. 5, of the extra session, approved seventeenth March, 1870, he is not amenable to the process invoked.

Section one of the act, upon which he relies, is as follows:

"That from and after the passage of this act, no court within the State shall have authority or jurisdiction to allow, order, hear, entertain, or enforce any summary process or proceeding, or writ, or order of mandamus, or any order or proceeding in the nature of an order or mandamus, either against the controller, deputy controller, or any auditing officer of the city of New Orleans, the object of which shall be, either directly or indirectly, to obtain or compel said controller or deputy controller, or auditing officer, to issue and deliver any order or warrant for payment of money, or against the treasurer, assistant treasurer, or any officer or officers charged with the disbursement of the moneys of the city of New Orleans, the object of which shall be, either directly or indirectly, to enforce the payment of money claimed to be due from the city of New Orleans to any person, persons, corporation, or corporations whatever, but all actions or proceedings for the recovery of any sum of money claimed to be owing by the city of New Orleans shall be in the ordinary form of action, instituted against the city of New Orleans as a corporation, and not against any branch, department, or officer thereof, and shall, in all respects, be conducted in the same manner as other ordinary actions."

The manifest object of this act was to restrict creditors of the city to the ordinary forms in the enforcement of their demands; to protect the property and means of the city from seizure under execution; and

to compel judgment creditors to have their judgments registered, so that they might be provided for, and paid in their regular order out of the annual budget for each year.

Counsel for relator maintain that this act conflicts with the articles of the Code of Practice authorizing the writ of mandamus. The Code of Practice is the general law; the act in question is a special law, which relates to the city of New Orleans and its officers alone. In certain cases, contemplated and provided for in the Code of Practice, suitors may enforce their rights by process of mandamus; but by the terms of the special law of 1870 all the courts of the State are forbidden to allow this writ to compel any auditing officer of the city of New Orleans to issue or deliver any order or warrant for the payment of money, or to compel any disbursing officer of the city to pay any money claimed to be due from the city. These officers of the city government are therefore, by this act, exempted from the summary proceedings to which other officers of other corporations may be subject by the general law, the Code of Practice. The articles of the Code of Practice which allow and provide for this process are not repealed; they are simply not to be applied to the auditing and disbursing officers of the city of New Orleans for the purposes specified in the act.

The Code of Practice is a general statute, which was approved fourteenth March, 1870; the act in question is a special statute, which was approved seventeenth March, 1870; and if they were in conflict, the last expression of legislative will would prevail.

It is objected that in this act No. 5 the auditing officers are designated as the controller and deputy controller, and the disbursing officers as the treasurer and assistant treasurer; and that in the act No. 7, approved sixteenth March, 1870, amending the city charter, these offices were abolished, and their places supplied, respectively, by an auditing officer styled the Administrator of Public Accounts, and a disbursing officer styled the Administrator of Finance, under the new charter.

The act does, indeed, designate the auditing officers as the controller and deputy controller; but it adds immediately, "or auditing officer;" and it designates the disbursing officers as the treasurer and assistant treasurer; but it adds, immediately, " or any officer or officers charged with the disbursement of the moneys of the city of New Orleans." The Legislature had in view the officers performing certain functions, and designated them by the official titles under which those functions were performed at the time the act was passed; but the language used is sufficient, and it was evidently so intended, to apply to the officers of the city government, by whatever titles they might be designated, charged with the functions which, at that time, were performed by the

controller and deputy controller, and the treasurer and assistant treasurer, respectively.

Again, it is urged that this act No. 5 was intended to apply to unliquidated demands, contested claims, and not those admitted to be due and owing. The act makes no such distinction; and its terms include any and all orders or warrants for the payment of money, and any and all moneys to be paid, claimed to be due from the city, whether such claims be unliquidated and contested, or be liquidated and admitted to be due. Mandamus will not lie to compel payment of unliquidated demands or contested claims. The payment of demands against the city, liquidated by judgment in solemn form, can not be enforced otherwise than as provided in the second and third sections of the act; and it would be extraordinary if claims merely admitted to be due, not liquidated by judgment, could be enforced by this summary process, to which even judgment creditors are not permitted to resort. The disbursing officer pays only on orders or warrants. Orders and warrants pre-suppose liquidated demands, admitted to be due; and the restriction of the prohibitions of the first section to unliquidated or contested demands, would make any reasonable interpretation of the entire act impossible, and would defeat its manifest purpose and intent.

Counsel for relator argue that he has no adequate remedy otherwise than by writ of mandamus; and if the act of 1870 be so interpreted as to deny him this remedy, it will be in conflict with article ten of the constitution, which provides that every one injured in property or person, or reputation, shall have adequate remedy by due process of law, and justice shall be administered without denial or unreasonable delay.

The act does not deprive the creditors of the city of adequate remedy; that is, such remedy as creditors in general have against their debtors by suit in the ordinary forms. The creditor who has recovered judgment against an executor or administrator is not permitted to seize and sell, under execution, the property which belonged to the deceased, nor to enforce payment otherwise than in due course of administration. The creditor who has recovered judgment against his debtor can not seize under execution the homestead or certain other property and rights specially exempted by law; and in many cases the debtors have no other property or rights than such as are not subject to the pursuit of creditors. The creditors of the city of New Orleans may sue and obtain judgment; but the city has no property or rights not exempt from seizure under execution, because the statute forbids the issue of execution against the city. The city can pay its debts only out of its revenues, whether derived from taxes or from other sources; and if the city could be interfered with by seizure under execution in the collection and control and disbursement of its revenues, as current exigencies require, the

6 ·

city government could not be administered—could no longer subsist. The second and third sections of the act provide for the registry of all final judgments against the city, and for their payment out of the annual budget; that is, in due course of administration, by the administrators chosen and appointed by law.

An act designed to deprive the citizen of a remedy, by due process of law, would be in violation of the constitution, and would defeat the grand object of political organization, the protection of the citizen in the enjoyment of his life, his liberty; and his property; but it is no violation of the organic law, nor is it an infringement of the rights of the citizen, to prohibit resort to certain summary proceedings, certain extraordinary remedies, to enforce claims and demands of a specified character, for the enforcement of which by other means and process, special provision is made by law.

The claims asserted by relator accrued in 1876, under the dominion of the act of 1870: so that there is no question as to legislative interference with vested rights and pre-existing contracts or obligations. The act in no manner violates the organic law; nor is it controlled by the articles of the Code of Practice relative to the writ of mandamus. The judgment of the district court maintaining the exception and dismissing the proceeding is in conformity with the expression of the legislative will; and the relator must seek his remedy, and enforce his demands in subordination to that will.

The judgment appealed from is therefore affirmed with costs.