## STATE EX REL. WILLIAMS v. CITY OF NEW ORLEANS

---

(November 16, 1931. Opinion and Decree.)
(November 30, 1931. Rehearing Refused.)
(January 4, 1932. Writs of Certiorari and Review Refused by Supreme Court.)
(March 30, 1932. Opinion and Decree of Supreme Court.)

---

Edward Rightor, of New Orleans, attorney for relator, appellee, George E. Williams.

Michel Provosty and Francis P. Burns, of New Orleans, attorneys for defendant, appellant.

JANVIER, J. During February, 1931, one Henry Kingston, a prisoner in the custody of the criminal sheriff in New Orleans, became gravely ill. There being in the then used prison no facilities for treating and properly attending to seriously ill prisoners, the sheriff, on the approval of the district attorney, obtained from the two judges of the Criminal District Court, in whose respective divisions the charges against Kingston were pending, an order to remove the said prisoner to the Charity Hopsital and to provide for special guards to attend him while he remained in the said hospital. The guards remained in attendance from February 27, 1931, to May 18, 1931, and for that period their salaries amounted to $999.99. The sheriff then obtained, on a bill for that sum, the approval of the clerk of the court, the district attorney, and the two judges above referred to, and presented the said bill to the commissioner of public finance for the city of New Orleans.

The city, acting through the said commissioner, refused to honor the bill, and relator, the criminal sheriff, now seeks, by mandamus, to compel the city to make payment.

The sheriff contends that, under section 1042 of the Revised Statutes, which section is Act No. 22 of 1859, as re-enacted by Act No. 16 of 1884, not only is the city liable for such charge, but that it is the ministerial duty of its disbursing officer to make payment. That section (Rev. St. sec. 1042), among other things, provides that expenses incurred "in the city of New Orleans, by the arrest, confinement, maintenance and prosecution of persons accused * * * and all expenses whatever attending criminal proceedings, shall be paid * * * by the city of New Orleans * * * by the city treasurer * * * after an account thereof shall be duly certified to be correct by the clerk of the court and the presiding judge thereof."

The city maintains, by way of exception, that, even if relator's contention be correct as to the liability of the city for unusual and extraordinary expenses, such as those here involved—which, in the second contention, is not conceded, but, on the contrary, strenuously denied—nevertheless mandamus cannot be resorted to to compel payment; that an ordinary suit must be brought and judgment first obtained in that suit; in other words, that the certificate of approval issued by the judge and

the clerk of the criminal court is not conclusive and binding on the city.

The city, secondly, and on the merits of the controversy, contends that section 1042 of the Revised Statutes, which is a general provision under which the city is required to pay the expenses of criminal proceedings and the cost of taking care of prisoners, and under which it may well be contended that all such expenses must be paid by the city, has been overridden, in so far as it requires the city to pay the salaries of all regular or special deputy criminal sheriffs, by Act No. 108 of 1928, which later act fixes the number, the salaries, and the duties of deputy criminal sheriffs in the city of New Orleans.

The district court rendered judgment as prayed for, and the city has appealed.

The question of the right to proceed by mandamus will be first considered, and we shall proceed to refer to and to discuss the various adjudications of the Supreme Court in analogous situations.

The earliest case to which we have been referred on the subject is Parker v. Robertson, 14 La. Ann. 249, in which the Supreme Court had under consideration Act No. 191 of 1857, under which the criminal expenses "incurred in the different parishes of this State, by arrests, confinement, and prosecution of persons accused of crime * * * shall be paid by the State, upon the certificate of the Clerk and the presiding Judge of the several courts of this State." It was contended that, even after the issuance of the certificate referred to, the auditor still retained discretion to issue, or not to issue, the necessary warrant, but the Supreme Court held, as appears from the syllabus, that, after the said certificate had been issued by the proper officers, "the duties of the Auditor relative to accounts for such expenses thus certified, are ministerial and imperative." In passing, it might be well to note that the Supreme Court in that case stated that the auditor might refuse to issue the warrant, if the certificate of the clerk and judge "should show upon its face that it was not drawn in accordance with the law, as, for instance, if it purported to be for fees in civil suits."

In the first adjudication, then, in a similar situation, we find that the Supreme Court held that mandamus is the proper procedure to compel the disbursing authority to pay a bill certified by the clerk of court and the judge.

The question was again presented in Shaw v. Howell, 18 La. Ann. 195, in which case the statute under consideration was Act No. 22 of 1859 (though the court does not so state in its opinion) which was almost identical with the act of 1857, except that, under it, the expenses referred to were required to be paid by the various parishes, or by the city of New Orleans, instead of by the state itself.

The sheriff of the parish of Orleans sought, by mandamus, to compel the city of New Orleans to issue and pay a warrant in his favor based on a voucher approved by the clerk and the judge of the criminal court. The comptroller and the treasurer of the city of New Orleans excepted to the form of the proceeding, contending that they could not, by mandamus, be compelled to make payment of such a bill. The trial court overruled the exceptions, holding that mandamus was the proper remedy. The Supreme Court said: "The exceptions filed by the Comptroller and Treasurer were properly overruled, * * *" so that here,

again, we find that the Supreme Court held that mandamus is the proper remedy to compel the city of New Orleans to pay such a bill.

In City of New Orleans v. Patton, 27 La. Ann. 168, the city brought suit against a former sheriff to recover a large sum of money, which it alleged had been paid him over and above the amount to which he was entitled by law. There was judgment for the defendant sheriff. On appeal the Supreme Court held that the various certificates issued by the clerk and the criminal judge were conclusive and binding upon the city, and further said:

"The city can not go behind the bills thus authenticated and contest any of the items therein contained."

While the question of the right to the issuance of a mandamus was not involved in that suit, the holding of the court to the effect that, the certificate having been issued by the clerk and the judge, the city could not refuse to make payment, carries with it the conviction that, had the bills not been paid, the court would have held the sheriff entitled to a mandamus to compel the city to carry out its ministerial duty of paying the bills, which had been approved by the proper authorities.

There are, however, in the jurisprudence of this state, three cases which, on first reading, appear to support the view that more than a mere ministerial duty is involved, and that the city may question the correctness and the legality of the bills presented by the sheriff, even though they be approved by the judge and the clerk. These cases are Fitzpatrick v. City of New Orleans, 27 La. Ann. 457; State ex rel. Houston v. City of New Orleans, 30 La. Ann. 82; and State ex rel. Guion v. Chauvin, 147 La. 703, 85 So. 645, 647. We will first discuss the Fitzpatrick case, then the Guion case, and leave for final consideration the Houston case, because the last-mentioned decision contains language referred to in various cases and which we find it very difficult to reconcile with that contained in the other decisions to which we have referred. In the Fitzpatrick case the suit was brought by the clerk of the criminal court against the city for salary and fees claimed to be due him. The bills were approved by the judge of the court. It was contended "that the account sued on having been approved by the judge, the city is concluded"; in other words, that the city had nothing but a ministerial duty to perform as soon as the account was approved by the criminal judge. Fitzpatrick cited and relied on the cases to which we have referred, Parker v. Robertson, Shaw v. Howell, and City of New Orleans v. Patton, supra. The Supreme Court held that it was evident from the certificate itself that the account which had been certified as correct by the judge covered items which were illegal, and that therefore, since, on the face of the certificate, illegality appeared, the city could not be made to pay the account as a ministerial duty. The court quoted with approval the following language, which appears in Parker v. Robertson:

"It is true, that as the certificate is, according to Mr. Crittenden, 'the evidence of the exercise of a special and limited jurisdiction it must show upon its face a case within that jurisdiction.'

"If, for example, the certificate of the Judge and Clerk should show upon its face that it was for fees in civil suits, the Auditor might refuse to authorize its payment, because there is no law empowering the Judge and Clerk to certify them in order to have them paid by the State."

We take it, then, that the decision in the

Fitzpatrick case is in line with the other decisions to which we have referred, and that the Supreme Court, in that case, did not intend to overrule the other cases, but merely added to the doctrine that mandamus is the proper remedy to compel the city to pay such an account as is involved here the qualification or proviso that the city may refuse to make payment if, on the face of the papers themselves, it appears that there is an illegality, or that included in the bill are accounts for which there is no lawful authority.

We interpret the decision of the Supreme Court in the Guion case in the same way. There a district attorney sought to compel the payment to him of salary warrants. The Supreme Court on the merits held that the mandamus prayed for should not be made peremptory, but in the opinion used the following language:

"The duty of the parish treasurer to make payment on warrants which have been issued 'by the proper authorities' is clear and imperative; but, as was very properly held in the Houston case just cited, it would be otherwise if the voucher should show upon its face, to which may be added, if the account to which the voucher was appended should show, that it was not within the law; in other words, that the police jury was not the proper authority to allow, approve, or certify to the correctness of the account.

"Here it is shown that the police jury was without authority to issue the warrants sued upon; and the parish treasurer therefore had the undoubted right to refuse payment thereof, and to thus cause the matter to be submitted to the court for determination."

We now find it necessary to consider the decision rendered by our Supreme Court in State ex rel. Houston v. City of New Orleans, the syllabus of which reads as follows:

"The approval by the Clerk and Judge of the Criminal Court of the parish of Orleans, of the account of the Criminal Sheriff, for fees and expenses of his office, does not amount to a judicial decree in his favor for the amount of the account, nor conclude the city of New Orleans from contesting the account. And if the city should dispute the correctness of his bill, he must, like the holder of any other contested bill, sue and obtain judgment on it, before he can ask for a mandamus to compel its payment."

It must be conceded that, at first glance, the language above quoted seems irreconcilable with that contained in the various decisions to which we have referred, and yet, in view of the light thrown upon the question in those other decisions, and also in the Guion case, we have reached the conclusion that what the court intended to hold in the Houston case was that the city may dispute the correctness of the bill if illegality appears upon the face of it. It is very evident that, in the Guion case, the Supreme Court so interpreted the Houston decision, because, in the Guion case, the court said that it was the ministerial duty of the parish treasurer to make payment, unless "as was very properly held in the Houston case * * * the voucher should show upon its face * * * that it was not within the law. * * *" We confess that the decision in the Houston case, had there been no earlier decisions, and had that decision not been referred to and interpreted in the Guion case, we would have felt to be conclusive here. But, in the light of the entire jurisprudence on the subject, we hold that mandamus is the proper method of procedure, but that, in defense to an action for the issuance of a writ of mandamus, the respondent may interpose any objection appearing from the documents themselves, taking into consideration the legislative enactments pertinent

thereto. If, however, we have not properly interpreted the Houston decision, and if, as a matter of fact, it was the purpose of our Supreme Court to hold that mandamus will not lie, we feel that no substantial harm has been done, and that, in fact, in most cases no serious harm will be done in similar situations, because the only purpose of a mandamus is to compel a speedy trial of the matters actually involved, and here we find before us the entire record presenting the contentions of the parties on the merits of the case. For instance, if we felt that mandamus is not the proper remedy, and if we should dismiss this suit solely on the ground that the method of procedure is incorrect, the present relator would be relegated to an ordinary suit for the collection of the amount claimed by him to be due. A new suit would then be filed and would have to be tried upon its merits, and the same defense, which is here presented on the merits, would be found in that other case. So that, even if there be some doubt as to the correctness of the method of procedure, no substantial harm has been done, or will be done, particularly since, upon consideration of the merits, we have come to the conclusion that relator's claim should be dismissed.

Having determined that the controversy may properly be presented on a petition for mandamus, we shall now present our reasons for the view already expressed that the claim of relator should be rejected.

Section 1042 of the Revised Statutes is a general enactment providing for the payment by the City of New Orleans of "all expenses whatever attending criminal proceedings." In the absence of other legislation on the subject, we could not do otherwise than hold that the salaries of all deputy criminal sheriffs should be paid by the city, and that the criminal sheriff could not be limited in the number selected, except by the necessity therefor and the reasonableness of his requirements. But in 1928 the Legislature enacted Act No. 108 which has for its object the definite fixing of the number of deputies to be employed by the criminal sheriff. That statute, in State ex rel. McKay et al. v. City of New Orleans, 171 La. 670, 131 So. 843, was held to be constitutional. It is a special act, and, so far as it is inconsistent with Rev. St. sec. 1042, it repeals the latter. Counsel for relator contends that by the earlier enactment the sheriff is given the right to employ as many deputies as may be necessary. If that be true, then it is inconsistent with, and has been in that regard nullified by, the later statute, which limits the number to eighty-nine. Counsel for relator finds no conflict in the two statutes. He maintains that the act of 1928 was passed to provide for the regular, normal number of deputies necessary in the operation and maintenance of the sheriff's office and in the carrying out of the duties connected therewith, and he argues that, under the earlier statute, extraordinary expenses, such as the salaries of special emergency deputies, may still be assumed by the sheriff at the expense of the city. We do not so construe the statutes. It may be that, in extraordinary emergencies, a hardship will be placed on the sheriff, but equally as serious would be the upsetting and throwing out of balance of the city's budget, if it (the city) could be called upon unexpectedly to pay such unusual expenses.

It is conceded that the city might question the correctness of a bill issued by the sheriff, even though approved by the clerk and the judge of the criminal court, if, on its face, the bill showed that it was for an

account for which the city was not liable, and counsel for relator suggests, for instance, that, if the bill showed us on its face that it was for the salary of a civil sheriff, the city would not be precluded from contesting it. Since the act of 1928 limits the number of deputies to eighty-nine, it is just as much a violation thereof to bill the city for three deputies over and above that number as it would be to bill the city for the salary of a civil deputy, or for any other expense plainly illegal and violative on the face of the bill itself of statutory provisions.

The judgment appealed from is annulled, avoided, and reversed, the alternative writ is recalled, and relator's suit is dismissed, at his cost.

ON APPLICATION FOR REHEARING

In the application of the city of New Orleans for rehearing we have the unusual situation of a successful party asking for the amendment of an opinion rendered in connection with a favorable decree.

We have given further study to the matter and to the carefully and earnestly prepared brief presented on behalf of the city on application for rehearing and, as a result, our confidence in the view expressed to the effect that mandamus is the proper remedy in a matter of this kind has been considerably shaken.

Nevertheless, in view of the fact that we are convinced of the correctness of the decree rendered on the merits of the controversy, we have decided to refuse the rehearing requested by the city as well as the rehearing requested by relator.