**141 So. 460**

**STATE ex rel. WILLIAMS v. CITY OF NEW ORLEANS.**

**In re WILLIAMS.**

No. 31585.

March 30, 1932.

Rehearing Denied April 25, 1932.

Edward Rightor, of New Orleans, for relator.

Michel Provosty, City Atty., Francis P. Burns, Asst. City Atty., and Walter M. Barnett, Jr., all of New Orleans, for respondent.

**LAND, J.**

This is a mandamus proceeding brought by relator, criminal sheriff for the parish of Orleans, against the city of New Orleans, to compel it to pay a bill of $999.99 for the services of three extra guards employed by relator, on the order of the judges of the criminal district court for said parish.

In February of the present year, one Kingston was awaiting trial in the parish prison in the city of New Orleans for two penitentiary offenses. He was taken seriously ill at the time transfers were being made from the old to the new prison and normal conditions of safety did not prevail.

Relator, as criminal sheriff for the parish of Orleans, reported these facts to the two judges of the criminal district court before whom Kingston would be tried and to the district attorney; and these judges, on the advice of the district attorney, ordered relator to place Kingston in the Charity Hospital in New Orleans, and to hire guards to watch him while he was there.

Relator had the bill for the services of these guards audited by the clerk of the criminal district court, and approved by these judges, and sent to the city commissioner of finance, who refused to pay the bill.

Relator contends that the city of New Orleans is responsible for this bill under section 1042 of the Revised Statutes, which provides that all expenses incurred " * * * in the city of New Orleans, by the arrest, confinement, maintenance and prosecution of persons accused * * * and all expenses whatever attending criminal proceedings, shall be paid * * * by the City of New Orleans. * * * Such expenses shall be paid * * * by the City Treasurer * * * after an account thereof shall be duly certified to be correct by the clerk of the court and the presiding judge thereof."

The city of New Orleans admits in article XVII of its answer that, " * * * By the terms of Section 1042 of the Revised Statutes of 1870, all expenses incurred in the City of New Orleans by the arrests, confinement, maintenance, and prosecution of persons accused or convicted of crimes, their removal to prison, the pay of witnesses, jurors, and all expenses whatever attending criminal proceedings, shall be paid by the City of New Orleans."

Therefore, unless the city of New Orleans can clearly show that section 1042 of the Revised Statutes has been amended or modified by later legislation, it is manifest that the terms of this section are amply sufficient to cover the bill for $999.99 for the three guards, employed by relator to watch Kingston during his confinement on account of illness in the Charity Hospital.

The city of New Orleans contends that the bill of relator shows upon its face that it is not within the law, "because under Act No. 108 of 1928, the Criminal Sheriff for the Parish of Orleans has been allowed to employ the services of some eighty-nine deputies, whose salaries and duties are fixed by said law; that said Act No. 108 of 1928 specifically declares that it repeals all laws or parts of laws in conflict with said Act, and * * * the said relator is limited in his expense for criminal deputy sheriffs to the number of deputies designated by said law, and consequently, the Criminal Sheriff cannot impose upon the City of New Orleans any liability for further or additional deputy sheriffs." Answer, art. XVII.

The city of New Orleans further contends that "the said bill of the Criminal Sheriff for the salary of the extra deputies named does not show that they are among the number of deputies allowed him by Act No. 108 of 1928 and, therefore, the approval of the officers who have approved said bill cannot thereby convert said bill into a liability which must be assumed and paid by respondents, nor has the said relator the right by the extraordinary writ of mandamus to compel respondents to pay said bill." Answer, art. XVII.

As stated by the city of New Orleans in its answer, Act No. 108 of 1928 fixes the salary and defines the duty to be performed by each and every deputy criminal sheriff therein named.

For this very reason, the criminal sheriff for the parish of Orleans has no legal right to displace and compel any of these deputies to discharge other duties than those assigned to him by law. It must be assumed that the Legislature intended that each and every deputy named in the act is needed for the performance of each and every duty to which he has been assigned.

The deputies whom the criminal sheriff for the parish of Orleans is authorized to name, under Act No. 108 of 1928, are regular criminal deputy sheriffs, and are daily engaged in the discharge of routine duties.

This act, unquestionably, denies to the criminal sheriff for the parish of Orleans the right to employ additional criminal deputy sheriffs to perform any of the duties defined therein.

But there is not a single word in this act that pretends to prohibit the criminal sheriff for the parish of Orleans from hiring deputy sheriffs in case of emergency, such as guarding a sick prisoner in a hospital, for which Act No. 108 of 1928 makes no provision at all. And the reason for such omission is that the Legislature was well aware that such deputies might be appointed and paid, as occasion required, under the broad provisions of section 1042 of the Revised Statutes of 1870.

Not only does humanity dictate, but the actual necessity for guarding in a hospital a prisoner who is ill is as great as the necessity for having "day and night keepers and guards" at the parish prison, as provided in Act No. 108 of 1928, to watch over a well prisoner who may be incarcerated therein.

Our conclusion is that Act No. 108 of 1928 has not amended or modified section 1042 of the Revised Statutes of 1870, so as to prohibit the criminal sheriff for the parish of Orleans from employing additional deputies to guard a sick prisoner in a hospital, when the requirements of that section have been complied with, as in the present case.

2. The Court of Appeal for the parish of Orleans held that mandamus was the proper proceeding in the present case, citing Parker v. Robertson (1859) 14 La. Ann. 249; Shaw v. Howell (1866) 18 La. Ann. 195; New Orleans v. Patton (1875) 27 La. Ann. 168; Fitzpatrick v. City of New Orleans (1875) 27 La. Ann. 457; State ex rel. Houston v. City of New Orleans (1878) 30 La. Ann. 82; State ex rel. Guion v. Chauvin (1920) 147 La. 703, 85 So. 645.

In so holding our able brothers of the Court of Appeal overlooked entirely Act No. 5 of 1870, Extra Session.

In State v. Brown (1878) 30 La. Ann. 78 the court said: "In virtue of an act of the Legislature passed March 17, 1870, no creditor of the city of New Orleans, whether he be the holder of a liquidated, or an unliquidated claim, can compel by mandamus, any auditing officer of the city to issue, or deliver to him, a warrant for any amount due him; or compel any disbursing officer of the city to pay him any sum which he may claim that the city owes him." See section 1 of Act No. 5 of 1870, Extra Session.

In State ex rel. Klein v. City of New Orleans (1883) 35 La. Ann. 781, it is said: "Neither the District Court, nor this Court, has jurisdiction to issue a mandamus, to a municipal officer of the City of New Orleans, for the purpose of drawing money from the municipal treasury.

"Section 1 of Act 5 of 1870 is an absolute prohibition and must be respected.

"It applies to all persons and to all claims, whether liquidated or not by judgment or otherwise.

"It does not deprive creditors of other process.

"A mandamus may issue at the instance of judgment creditors, under other Sections of the Act, for other purposes. It does not lie for the object of this proceeding."

In State ex rel. James D. Houston v. City of New Orleans (1878) 30 La. Ann. 82, it is said in the syllabus: "The approval by the Clerk and Judge of the Criminal Court of the parish of Orleans, of the account of the Criminal Sheriff, for fees and expenses of his office, does not amount to a judicial decree in his favor for the amount of the account, nor conclude the city of New Orleans from contesting the account. And if the city should dispute the correctness of his bill, he must, like the holder of any other contested bill, sue and obtain judgment on it, before he can ask for a mandamus to compel its payment."

In the Houston Case, the city of New Orleans contended: "That, under act No. 5 of the extra session of the Legislature of 1870, no court within the State had authority or jurisdiction to order, allow, hear, entertain, or enforce any summary process, or writ of mandamus, to compel the payment of money claimed to be due to any one by the city of New Orleans." Page 83 of 30 La. Ann.

The dicta of the Houston Case, a case directly in point, are repeated in State ex rel. Douglas v. Kennedy (1908) 121 La. 757, 46 So. 796, in which the court said: "Section 1 of Act No. 5, p. 10, of 1870 * * * prohibits creditors of the city of New Orleans from enforcing the payment of claims out of the municipal treasury by mandamus proceedings directed against the city's auditing and disbursing officers. The remedy of such creditors is by ordinary action against the corporation."

The following is the history of the cases relied upon by the Court of Appeal:

Parker v. Robertson, 14 La. Ann. 249, and Shaw v. Howell, 18 La. Ann. 195, were decided prior to the passage of Act No. 5 of 1870, Extra Session.

New Orleans v. Patton, 27 La. Ann. 168, and Fitzpatrick v. City of New Orleans, 27 La. Ann. 457, were decided subsequent to the adoption of Act No. 5 of 1870, Extra Session, and were not mandamus suits, but ordinary actions.

State ex rel. Guion v. Chauvin (1920) 147 La. 703, 85 So. 645, was a mandamus suit from the parish of St. James, while Act No. 5 of 1870, Extra Sessions, is expressly confined in its operations to the parish of Orleans.

Our conclusion is, therefore, that the remedy of relator is by ordinary action against the city of New Orleans. Final judgment, when obtained, is to be enforced in the manner provided by Act No. 5 of 1870, Extra Session.

Counsel for relator and counsel for the city of New Orleans have requested the court to take the whole case, as we are authorized to do by article 7, § 11, of the Constitution of 1921, and to pronounce judgment herein both upon the proper procedure and the merits.

In the civil district court, judgment was rendered in favor of relator, and a mandamus was issued ordering the city of New Orleans to pay relator the sum of $999.99 for services rendered by the extra deputy criminal sheriffs employed by relator, out of the funds of the city of New Orleans not otherwise appropriated and for costs.

On appeal by the city of New Orleans, the Court of Appeal passed both upon the remedy—holding that mandamus was the proper procedure—and upon the merits, which were decided against relator.

In our opinion, however, an ordinary suit is the proper procedure, and relator should recover on the merits.

It is therefore ordered that the judgments of the civil district court, and of the Court of Appeal for the parish of Orleans, be annulled and reversed.

It is now ordered that there be judgment in favor of relator, George E. Williams, and against the city of New Orleans, represented herein by the Honorable T. Semmes Walmsley, mayor thereof; A. Miles Pratt, commissioner of public finance; Joseph P. Skelly, commissioner of public property; Frank R. Gomila, commissioner of public safety; and Fred A. Earhart, commissioner of public utilities—all members of the commission council of the city of New Orleans—in the full sum of $999.99 and all costs.

O'NIELL, C. J., is of the opinion that the court, having decided that the relator had no right to proceed by mandamus, should merely dismiss the suit, without rendering a decision on the merits of the claim.